IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
                         :
        v.               :    CRIM. NO. 09-471-4
                         :    CIV. NO. 14-4535
RICHARD MOQUETE          :

# O R D E R

Proceeding *pro se*, Petitioner Richard Moquete has filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence," and a "Motion to Supplement." (Doc. Nos. 339, 349.) The Government has moved to dismiss both as time-barred. (Doc. Nos. 351, 365.) I will grant the Government's Motion and deny Petitioner's § 2255 Motion without an evidentiary hearing. I will conduct an evidentiary hearing on the initial claim Petitioner purports to raise in his "Motion to Supplement."

## I.   BACKGROUND

Petitioner participated in a cocaine distribution ring that brought huge quantities of narcotics from Mexico to Ohio, Pennsylvania, and New York in tractor trailers. Petitioner distributed cocaine in the Philadelphia area and sent the cash proceeds back to Mexico in the same trucks.

After a two-week trial, the jury found Petitioner guilty of one count of conspiracy to distribute five kilograms or more of cocaine, three counts of distributing five kilograms or more of cocaine, and one count of possession with intent to distribute five kilograms or more of cocaine. (Doc. No. 228); 21 U.S.C. §§ 841, 846. Petitioner's advisory Guidelines range was 324 to 405 months. (Doc. No. 306 at 7.) I sentenced Petitioner to 324 months imprisonment. (Doc. No. 255.)

On his direct appeal, Petitioner argued that he should not have been classified under the Guidelines as a "manager or supervisor."  See U.S.S.G. § 3B1.1(b).  The Third Circuit ruled that Petitioner qualified for the enhancement and affirmed his conviction on April 25, 2013.  United States v. Moquete, 517 F. App'x 115 (3d Cir. 2013).  On October 21, 2013, Petitioner filed with the Third Circuit a request for permission for leave to file for certiorari.  (Case No. 12-2546.)  The Third Circuit did not act on the request, explaining that it lost its authority to act after it issued the mandate on May 16, 2013.  (Id.)  Petitioner never filed a petition for a writ of certiorari.

On February 18, 2014, Petitioner filed in this Court a *pro se* Motion for Extension of Time to seek § 2255 relief.  (Doc. No. 326.)  On February 24, 2014, Petitioner asked me to appoint counsel.  (Doc. No. 328.)  On February 26, 2014, I appointed Luther E. Weaver, III to represent Petitioner and denied without prejudice Petitioner's *pro se* request prospectively to toll the running of the limitations clock.  (Doc. No. 329.)

On July 30, 2014, Petitioner filed the instant *pro se* Motion.  (Doc. No. 339.)  In a letter dated that same day, Mr. Weaver informed me that Petitioner had chosen to proceed *pro se*.  (Doc. No. 340.)  In its Response to the § 2255 Motion, the Government did not discuss the issue of timeliness.  (Doc. No. 347.)

On January 12, 2015, Petitioner filed a Motion to Supplement his § 2255 Motion with additional claims for relief.  (Doc. No. 349.)  Petitioner argued that the delay in raising these additional claims was "a result of the simple realities of the amount of time it takes for *pro se* defendants to gather information and research issues."  (Doc. No. 349 at 1.)  I ordered the Government to respond and discuss, *inter alia*, the timeliness Petitioner's claims for relief.  (Doc. No. 350.)

On February 13, 2015, the Government moved to dismiss as time-barred all Petitioner's § 2255 claims. In the alternative, the Government argued that Petitioner's "supplemental" claims are time-barred. (Doc. No. 351.) On March 6, 2015, Petitioner responded to the Government's Motion to Dismiss. (Doc. No. 355.) On June 19, 2015, I ordered the Government to address the merits of the "supplemental" claims. (Doc. No. 360.) The Government filed its response on July 24, 2015, and Petitioner filed a reply on August 10, 2015. (Doc. Nos. 365, 369.)

## II.   LEGAL STANDARDS

The one-year § 2255 limitations clock generally runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). When a defendant takes a direct appeal and does not seek certiorari, the conviction becomes final (and the limitations clock begins to run) when the time expires for filing the certiorari petition. Clay v. United States, 537 U.S. 522, 532 (2003). A defendant has ninety days to petition for certiorari from "the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." Supreme Court Rule 13. The one-year statute of limitation may be equitably tolled if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010).

To make out ineffective assistance of counsel, Petitioner must show: (1) his attorney's representation was unreasonable under prevailing professional norms; and (2) but for that deficiency, there is a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688 (1984). "If a plea bargain has been offered, a Petitioner has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012). To establish prejudice, Petitioner

"must show that but for the ineffective advice of counsel there is a reasonable probability" that he "would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances." Id.

I may dispose of an ineffectiveness claim without deciding whether counsel's representation was reasonable if Petitioner has not shown prejudice. United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

Section 2255 is not a means to relitigate claims that were rejected on direct appeal. United States v. Pelullo, 305 F. App'x 823, 827 (3d Cir. 2008). There is an exception if there has been an "intervening change in law" affecting the claim and the petitioner is now entitled to relief. Davis v. United States, 417 U.S. 333, 342 (1974); Sonneberg v. United States, No. 01-2067, 2003 WL 1798982 (3d Cir. 2003).

I must conduct an evidentiary hearing "unless the [§ 2255] motion and files and records of the case show conclusively that [the petitioner] is not entitled to relief." Lilly, 536 F.3d at 195 (internal quotation marks omitted). I must accept a petitioner's factual allegations as true "unless they are clearly frivolous on the basis of the existing record." Id. A hearing is not required if the petitioner provides nothing more than "bald assertions and conclusory allegations." Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991).

### III. § 2255 MOTION

I may raise timeliness *sua sponte* if: (1) I give Petitioner adequate notice and an opportunity to respond; and (2) I find that Petitioner has not been prejudiced. United States v. Bendolph, 409 F.3d 155, 167-170 (3d Cir. 2005) (en banc). Petitioner filed his § 2255 Motion on July 30, 2014. (Doc. No. 339.) On January 13, 2015, I ordered the Government to brief the limitations issue after Petitioner moved to add new claims. (Doc. No. 350.) The Government

then moved to dismiss. (Doc. No. 351.) In his response, Petitioner argued that the limitations clock was equitably tolled. (Doc. No. 355.) Because Petitioner has not been prejudiced (and has made no suggestion of prejudice), I may consider the issue. Bendolph, 409 F.3d at 169.

The Third Circuit entered its judgment in Petitioner's direct appeal on April 25, 2013, the same day it issued its non-precedential opinion. Moquete, 517 F. App'x at 116. Petitioner thus had until July 24, 2013 (ninety days from April 25, 2013) to seek certiorari. Petitioner never sought the writ. On July 24, 2013, his conviction became final and the one-year § 2255 limitations clock began to run. Clay, 537 U.S. at 532. Accordingly, Petitioner had until July 24, 2014 to seek relief. 28 U.S.C. § 2255(f)(1). He did not file his Motion until July 30, 2014—four business days after the one-year deadline.

Petitioner argues that "extraordinary circumstances" prevented him from timely filing because his former counsel, Mr. Weaver, "misinformed Petitioner of the 'Filing Deadline.'" (Doc. No. 355 at 4.) In February 2014, five months before the § 2255 deadline, I appointed Mr. Weaver to represent Petitioner. (Doc. No. 326.) On March 6, 2014, Mr. Weaver sent Petitioner a letter addressing Petitioner's "concern for having time to file" his § 2255 Motion. (Doc. No. 355, Ex. 4.) Mr. Weaver advised that Petitioner had until August 14, 2014 to file. (Id.) This was incorrect: Mr. Weaver calculated the deadline using the date that the Third Circuit issued the mandate—not the date the Third Circuit entered judgment—to calculate the date on which Petitioner's time for filing a writ of certiorari expired and his conviction became final. See Fed. R. App. P. 40(a)(1) & 41(b) (when no petition for rehearing is filed with the Court of Appeals, the mandate issues twenty-one days after entry of judgment). Mr. Weaver thus wrongly advised Petitioner that he had an extra twenty-one days to file his § 2255 Motion.

Although Mr. Weaver miscalculated, "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, 549 U.S. 327, 336-37 (2007); see also Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling."). Accordingly, Petitioner has not shown that extraordinary circumstances might excuse his § 2255 Motion, which is thus time-barred.

In the alternative, I conclude that the claims Petitioner seeks to raise are meritless. He first alleges that his trial counsel, Scott Sigman, was ineffective because after Petitioner's trial, the Pennsylvania Supreme Court suspended Mr. Sigman from the practice of law for thirty months. (Doc. No. 343 at 5.) Petitioner's trial concluded in January 2012 and I sentenced him on May 21, 2012. (Doc. Nos. 271, 289.) Sigman was suspended on February 28, 2013 for 2005-2009 misappropriation of law firm funds. (Doc. No. 343, Ex. A.) Sigman was not disciplined for any conduct related to his handling of Petitioner's case—indeed, his suspension was not for professional incompetence. Petitioner thus has not shown that he was ineffectively represented by Mr. Sigman. See Vance v. Lehman, 64 F.3d 119, 124 (3d Cir. 1995) ("Representation of defendant by attorney whose license to practice law was revoked after trial because of prior unrelated professional conduct did not per se deny defendant Sixth Amendment right to counsel."); United States v. Young, No. 09-CR-152-01, 2013 WL 2392902, at *8 (E.D. Pa. May 31, 2013) ("[T]rial counsel's ethical lapses or pending ethics charges will only justify *habeas* relief on this basis if the Petitioner can show that the attorney's conduct of the defense fell below the constitutional requirements and prejudiced the petitioner.").

Petitioner next alleges that Sigman ineffectively failed to object to the drug quantity finding at sentencing. (Doc. No. 343 at 7-10.) Any objection to the drug quantity would have been frivolous, however. The trial evidence showed that Petitioner and his co-conspirators distributed vastly more than 150 kilograms of cocaine. (See, e.g., Doc. No. 262, Tr. 1/18/12 at 33-36, 63-65, 107-09, 114-16, 190-91, 198-202, 211-12, 215-16, 221-24; Doc. No. 263, Tr. 1/19/12 at 18-19, 29-31, 114-16, 152-54; Doc. No. 266, Tr. 1/24/12 at 144-46, 190-93, 197-202, 210-13.) The trial evidence supports Probation's observation that "information gained during the investigation of the [Lara/Prieto Cocaine Organization] estimates that at least 1,500 kilograms were delivered to Philadelphia." (PSR ¶ 19.) Similarly, Probation correctly noted that, between March and October 2006, Government agents witnessed Petitioner send some $3 million in cocaine proceeds from Philadelphia to Mexico. (PSR ¶¶ 27-39.) Once again, because the trial evidence amply supports these observations, an objection to the use of 150 killograms in calculating Petitioner's Guidelines range would have been pointless. See United States v. Berry, 314 F. App'x 486, 487 (3d Cir. 2008) ("[C]ounsel is not ineffective for failing to raise meritless claims.").

Petitioner next argues that I erred in applying the three-point enhancement for Petitioner's role as a manager or supervisor. (Doc. No. 343 at 11); U.S.S.G. § 3B1.1(b). The Third Circuit ruled on Petitioner's direct appeal that the enhancement was properly applied to Petitioner. Moquete, 517 F. App'x at 116. Because Petitioner has not suggested any intervening change in law, he cannot now relitigate the issue on collateral review. Pelullo, 305 F. App'x at 827.

Finally, Petitioner alleges that counsel ineffectively failed to ask me to instruct the jury that Petitioner "could have or could have not been responsible for up to 150 kilograms of

cocaine." (Doc. No. 343 at 13.) Presumably, such an instruction would have aided Petitioner's argument at sentencing that he was responsible for less than 150 kilograms. As I have explained, however, the trial evidence belied such an instruction. In any event, there is no legal authority for the instruction and I would not have given it to the jury. See United States v. Williams, 166 F. Supp. 2d 286, 296 (E.D. Pa. 2001) ("[E]ven if trial counsel had requested the instruction it would not have been given and thus any deficiency would have absolutely no effect on the outcome of the trial."). I instructed the jury that it should determine whether the charges involved five or more kilograms of cocaine, the amount charged in the Indictment and the amount sufficient to trigger a ten-year mandatory minimum sentence. See 28 U.S.C. § 841(b)(1)(A)(i). This was all that was required. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); see also Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013) (in case that post-dates Petitioner's trial, Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"); United States v. Smith, 751 F.3d 107, 117 (3d Cir. 2014) ("Alleyne did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range."). In these circumstances, Petitioner has not shown ineffectiveness.

In sum, I conclude that Petitioner's § 2255 Motion is time-barred. In the alternative, I conclude that the issues Petitioner raises are meritless.

### IV.   MOTION TO SUPPLEMENT

On January 7, 2015, Petitioner filed a Motion to Supplement, including two new ineffectiveness claims. (Doc. No. 349.) Even if I assume that his original § 2255 Motion was

timely, Petitioner may not add new claims more than five months after the one-year limitations period has expired. See United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000); United States v. Oliver, 379 F. Supp. 2d 754, 762-63 (E.D. Pa. 2005). Moreover, Petitioner does not even attempt to argue that equitable tolling should apply to these belated claims. (Doc. No. 355.) Rather, Petitioner states that the five-month delay "is a result of the simple realities of the amount of time it takes for pro se defendants to gather information and research issues." (Doc. No. 349 at 1.) These are not "extraordinary circumstances" that might toll the statute of limitations clock. See Ross v. Varano, 712 F.3d 784, 799-800 (3d Cir. 2013). In these circumstances, the issues in Petitioner's Motion are plainly time-barred. In an abundance of caution, however, I will consider the belated claims on the merits.

Petitioner first alleges that Signman advised him that "the most he would receive if he lost at trial was the [ten]-year mandatory minimum." (Doc. No. 349 at 6.) Petitioner alleges that on the basis of this advice he rejected the Government's "verbal plea offer" of ten years—the statutory mandatory minimum. (Id. at 5.) In its response, the Government attached two sworn declarations from the AUSAs who prosecuted Petitioner, stating, *inter alia*, that the Government never offered Petitioner any plea bargain, and that a verbal plea offer would contravene the mandatory procedures of the U.S. Attorney's Office. (Doc. No. 365 at 13-14.) Because the record does not conclusively refute Petitioner's claim, I will conduct an evidentiary hearing on this issue.

Petitioner next argues that Sigman ineffectively failed to "mitigate Petitioner's sentence when the Government engaged in sentencing manipulation." (Doc. No. 349 at 14.) He alleges that after the FBI had seized numerous kilograms from members of the conspiracy, agents impermissibly delayed the arrest of Petitioner "for the sole purpose of increasing his

punishment." (Id. at 16).  Sentencing factor manipulation "occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible." United States v. Sed, 601 F.3d 224, 231 (3d Cir. 2010) (quoting United States v. Torres, 563 F.3d 731, 734 (8th Cir. 2009)).  The Third Circuit has neither accepted nor rejected the doctrine of sentencing manipulation. Id.

Petitioner cannot establish sentencing factor manipulation simply by alleging that the Government could have arrested him earlier in its investigation.  See id. ("[I]t does not offend due process for the police to persist in ascertaining what quantity [of drugs a defendant is] willing and able to deal . . . [and] the ultimate seizure of a larger quantity of illegal drugs from a suspect in connection with the arrest has positive societal consequences." (internal citations omitted)).  The touchstone of "sentencing factor manipulation" is *manipulation*, and Petitioner was in no way manipulated by the Government to distribute drugs.  United States v. Chappelle, 591 F. App'x 71, 72 (3d Cir. 2015) ("The key is manipulation, and the government did not in any way manipulate Chappelle, as Chappelle's own counsel conceded that 'he was predisposed to sell drugs.  He's a drug dealer.  There's no doubt about it.'").  As a convicted drug dealer who does not allege that he was enticed, entrapped, or manipulated by the Government to sell drugs in the first instance, Petitioner fails to raise a viable sentencing factor manipulation defense. Id. Nor can it be said that Sigman's decision not to raise this defense at trial was unreasonable under prevailing professional norms. See United States v. Rodriguez, No. 06-CR-00539-03, 2011 WL 2845768, at *11 (E.D. Pa. July 19, 2011).

Moreover, Petitioner acknowledges that even after the Government had sufficient evidence to charge him, its investigation "may have been continuing against other individuals,

possibly for legitimate purposes." (Id.)  Indeed, others were charged with Petitioner. (Doc. No. 1.)  Because arresting Petitioner earlier may have thus jeopardized a broader investigation, there were valid law enforcement reasons for the length of the investigation into Petitioner's conspiracy.  See United States v. Calva, 979 F.2d 119, 123 (8th Cir. 1992) ("Police . . . must be given leeway to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace . . . deeper into the distribution hierarchy.").  Accordingly, accepting Petitioner's argument "'would unnecessarily and unfairly restrict the discretion and judgment of investigators and prosecutors.'" Chappelle, 591 F. App'x at 72 (quoting United States v. Jones, 18 F.3d 1145, 1155 (4th Cir. 2015)).  In sum, Petitioner's Motion to Supplement does not establish that Sigman was ineffective for not raising the defense of sentencing factor manipulation at trial.

## V.     CONCLUSION

The claims in Petitioner's initial motion are time-barred and meritless.  I will conduct an evidentiary hearing regarding the first claim Petition seeks to raise in his Motion to Supplement.  I will not conduct a hearing regarding the second argument in Petitioner's Motion to Supplement ("sentencing factor manipulation").

**AND NOW**, this 1st day of October, 2015, upon consideration of Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 339), the Government's Response (Doc. No. 347), the Government's Motion to Dismiss (Doc. No. 351), Petitioner's Motion to Supplement (Doc. No. 349), the Government's Response in Opposition to Petitioner's Motion to Supplement (Doc. No. 365), and Petitioner's Reply (Doc. No. 369), **it is hereby ORDERED** that the Government's Motion (Doc. No. 351) is **GRANTED** with respect to Petitioner's Original Motion. (Doc. No. 339).  **It is further ORDERED** that Petitioner's

Motion to Supplement (Doc. Nos. 349) is **GRANTED in part and DENIED in part.**  I will conduct an evidentiary hearing on the first ineffectiveness claim Petitioner purports to raise in that Motion.  I will deny the Motion for a hearing with respect to the claim of "sentencing factor manipulation."

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.